We'll begin with United States v. Banks. Counsel? Good morning. If it pleases the Court, my name is Richard Cornell. I'm CGA Counsel for Leland Banks. Let me start by saying what's not in dispute. Number one, Banks attempted to murder Gilmore on January 6, 2004, in Las Vegas, Nevada. Number two, Banks was a member of the Rolling Sixties Crips on that date. Gilmore was a member of the Valley View Crips. And number three, the Rolling Sixties Crips are a racketeering enterprise within the meaning of the statute. The question in this case for jury instruction purposes and also for sufficiency of evidence purposes is, did Banks attempt to murder Gilmore for the purpose of maintaining or increasing his position in the Rolling Sixties? Counsel, I'm sympathetic to your position on that, but it looks to me as though we'd be setting up a circuit split, that all the circuits that have ruled on it say it only has to be among the purposes, not a principal or primary purpose. Is that true? That is true. The Second Circuit was the first circuit really to speak of this issue in depth in Concepcion. And all of the circuits have pretty much more or less fallen in line. And our position is, if that's the case, if we're not going to set up a circuit split, but we're going to follow Concepcion, then, at best, the language for the purpose of 1959A means a violent act that was an integral aspect of membership, that the defendant's general purpose was to maintain his position in the enterprise, and that he committed the violent act because he knew it was expected of him by reason of his membership in the enterprise. As I gleaned Concepcion, that's the key language. If the court agrees, our position is that Instructions 10 and 17 diluted the government's burden of proof because there's nothing in there about general purpose. There's nothing in there about integral aspect of membership. And what it actually says is that he did what he did at least in part because he knew it was expected of him. In other words, under these instructions, if the jury found that the enterprise motive was secondary or incidental, the government met its burden of proof. Our position is that's not only an unreasonable interpretation of Concepcion, it's an unreasonable interpretation of the plain language of 1959A. Your fellow would still be convicted of attempted murder and all the other crimes, just not the gang. Right. Our position all along is that this is a state court case and Banks should be in the Nevada Department of Corrections as we speak. There's no question he's guilty of an attempted murder. Now, the position that I'm arguing, and maybe I'm the only person in the United States who believes this, but the language for the purpose means for the purpose. At worst, for the purpose. I take it the distinction you're drawing is for the purpose rather than for a purpose. Correct. And how did the jury instruction read? It didn't say for the purpose or for a purpose or any purpose. Instruction number 17, and I know it's in the excerpt, the language that it used was that he did what he did because at least in part he knew it was expected of him. You've lost me. Okay. I thought your argument was a very interesting one when you say the statute says the and the jury instruction said, hey, that's what I got out of your brief. But I don't understand what you're telling me now. I would expect that you would know what the language is of the jury instruction so you could help in the argument of why this should not be a purpose instead of the purpose, which is in the statute. Here's what the instruction said, and it's at page 97 of the excerpt. As to the fifth element, the government must prove that at least one of the defendant's purposes or motives in committing the offense was to maintain or increase his position in a criminal enterprise. In this case, the alleged enterprise of Rolling Sixties Crips. It's not necessary for the government to prove that this motive was the sole purpose or even the primary purpose of the defendant in committing the charge. You need only find that it was one of his purposes. This element is satisfied if the defendant committed the charge of violent crime, at least in part because he knew it was expected of him by reason of his membership. And what you're saying is that the statute uses the word the. Correct. And that this is inconsistent with the statute. That is our position. And further, the problem that I have with Concepcion that no circuit has addressed is Concepcion treated this statute as a remedial statute, but it's a penal statute, which means that it's potentially subject to the doctrine of lenity, unlike a remedial statute. And secondly, what the Concepcion court did was it relied on legislative history. And in rereading Concepcion, it looks like the legislative history that they relied on was an absence of discussion on what do you do in a mixed motive case. Well, an absence of discussion means an absence of discussion. And in a way, to me, it's analogous to absence of evidence. This court doesn't countenance absence of evidence to meet a Jackson versus Virginia standard. How can we use an absence of discussion to prove what Congress was thinking? Well, those are a little different situations because in a criminal case, the government bears a certain burden of proof. Sure. With Congress, we do have the language. The absence of language could be construed as either Congress didn't think about it or everybody in Congress thought it was so obvious there was no need to discuss it. Now, if we go with the latter, then you have to ask yourself which way did they think it was so obvious it didn't require any discussion. And, Judge Bybee, my response would be if it was that obvious, then why didn't they say for a purpose or for any purpose? They said what they said for the purpose. Well, counsel, let's suppose that this was his primary purpose, but that there was an ancillary or auxiliary purpose. He had a personal dislike for this guy and didn't mind shooting him. Now, would that violate the statute? There's a mixed motive there. Right. It would seem to me that Congress not discussing this, probably the answer in all candor would be we don't want to interpret a statute to create an absurdity or to create something totally beyond what Congress intended. Most times we do what we do, or not most times, but many times, oftentimes, we do what we do for mixed reasons, for mixed motives. And it would seem, therefore, that if we're using language for the purpose, a reasonable interpretation would be primary purpose. And I would agree with that. I think that's a reasonable read of the statute. But secondary purpose, incidental purpose, I do not believe is a reasonable read of the statute. You would be willing to accept, then, that this must be a — that this could be a primary purpose? I think that would be reasonable. Does that mean, then, that it has to be greater than any other purpose, or could it just be an important purpose? Yeah. I would say overriding. You bet. Again, the basic plain language of the statute, for the purpose. Now, and really this becomes important in this case because of the factual background that's brought out in the record. Sometime in 2003, and I'm not real clear when from the record, Gilmour's girlfriend called Banks a crab, which is a grave insult in the rolling 60s Crips language. And when Gilmour wouldn't correct the situation on demand, the custom of the 60s was to retaliate violently against the offender, and this was Gilmour. When Banks attempted to do so during a dice game, Gilmour wrestled Banks' gun away from him and pistol-whipped Banks and put Banks in a coma for approximately four days. Now, there's no evidence that anyone else in the rolling 60s knew about this. There's no evidence that — As I understand it, that's not the insult, pistol-whipping and putting him in a coma. Shooting people is. Right. The insult is a crab. The insult's calling him a crab. Right. Exactly. But what happens between the sniper shot and the insult is this violent pistol-whipping and putting him in a coma. Could you put a — throw a little more light on how the purpose, which suggests singular or at least primary, turned into a purpose in Concepcion? I frankly did not fully understand the exposition about the slave industry. And, frankly, I mean, maybe that's Mr. Marsh's argument because I don't understand it either. What happened during jury instructions is that this Instruction 17 that I read was proposed by the government. Defense counsel objected. The government said, no, this is consistent with Concepcion, and the trial court said, I agree. And that is the record as I see it. But as I read Concepcion, I don't see that reading of the statute at all in Concepcion, which is why I say if you follow Concepcion — What objection did you make to the instruction to the court? The — well, first off, I was not the trial counsel, but the trial — You as generic counsel. Correct. Trial counsel made an objection based on a District of Connecticut case called U.S. v. Jones, which actually is a sufficiency of the evidence case where the District of Connecticut threw out a Vicar conviction where it appeared that the guy was personally — So is the — there was not objection based upon the difference between a and the? Not precisely. Well, I don't know what you mean by not precisely. It was an objection or wasn't an objection based upon the difference between a and the. Can you answer the question? Yes. No. No. So our standard review here is plain air? In all probability, yeah. But, I mean, again, if it's a — If you don't object to a jury instruction, our law is clear. It's plain air. And if the instruction misdefines the crime and lessens the government's burden of proof, the court will reach it, too, under plain air. We do have exceptions. Of course, the plain air rule you may well qualify for, but — Yes. But I just wanted to make sure we're at one on what the standard review is. Yeah. I think that's accurate. So you're conceding that we review it under a lano? Correct. Correct. Now, let me, if I may, in a few minutes, talk about the Allen charge issue as well. I'm going to submit the other two issues on the brief. But the Allen charge issue really flows from the purpose issue, because even with what we say is a diluted burden of proof, the jury almost hung, in this case, 9-3 for conviction, which is to say, initially, three jurors thought that — must have thought that the motive in this case was purely personal. The jury twice told the trial court it was deadlocked on two different calendar days. The trial court never asked, and the jury never volunteered, that it thought it could reach a verdict through further deliberation. And we submit that the court's actual instruction, which the court will find in excerpt pages 171 through 73, in my opinion, was more coercive than the circuit-approved Allen instruction of 7.7. The court told the jury at that point so many words that they hadn't been deliberating long enough to reach a decision and that, quote-unquote, folding their arms and refusing to discuss the evidence was not what was expected of them. And I have to take issue with one thing in the red brief that I didn't in the gray brief. After the jury was sent back, there was discussion amongst the parties about substituting the tape that was in evidence for a redacted tape. But I don't see anything, especially at 175 of the excerpt, indicate that the jury specifically asked for that, sent a specific note saying we wanted a clean tape. It was just something that the court and the parties did. To say that the jury listened to it, of course, is speculative. But our position is basically this. I had trouble seeing what was the matter with the instruction. The problem with an Allen charge instruction is that, at least theoretically, it may tell the minority, shape up a lot of people just as smart as you, think the other way. If they're just a couple of you, consider that you may be wrong. So it puts pressure on the minority to go with the majority. That's the theory for what's wrong with an Allen instruction. And this one just tells them, look, you've only been in there a couple of hours. That's a pretty short time for a case like this. You're not really ready to be hung. I don't see where that tells anyone to change their position. Well, had the judge not known what the breakdown was, I would probably be forced to agree. The difficulty I have is that he knew it was nine to three, nine for conviction. And to say you haven't been deliberating long enough to reach a decision to me, although it's not explicit, it's a message to the three. I don't see it. It tells the nine to listen to the three as much as it tells the three to listen to the nine. It just says they have to talk to each other. Right. Well, and where's the evidence that they didn't do that? I mean, for all we know, we had three jurors who understood the amount of time and evidence very quickly and jumped right to it and said, look, look at all this evidence. Look at what Gilmore said. It was by the time of the sniper shot. It was a personal beef between the two of them. End of story. This is a personal motive. The government has improved its case on counts one through four. How do we know that those three didn't reach that point? Anyway, I'll reserve if I have time. Good morning. I'm Russell Marsh. And I tried this case, along with my co-counsel, Assistant U.S. Attorney Kathleen Bliss, almost exactly two years ago. And I'd like to talk first this morning about the vicar purpose instruction.  And if we have time and you'd like to, I'll turn to the Allen charge. I also will submit the last two issues on the brief. Counsel, I frankly am reluctant to set up an inter-circuit conflict. On the other hand, I really have trouble understanding Concepcion. It looks like they just ignored the word the. And I can't quite understand their discussion of legislative history. I'll try to walk through it. And obviously the other two or three circuits that have looked at it have done the same thing and followed Concepcion and it would set up an inter-circuit split. They looked at the language of the purpose to maintain or increase the position within the enterprise. And they said that they needed to look at the legislative history. The legislative history of vicar is that it is meant to complement RICO. It's supposed to be a remedial statute. Why should we care about the legislative history? Aside from all the things that Justice Scalia has discussed in so many opinions and in his book, A Matter of Interpretation, this is a criminal law. You can't expect the criminal defendant community to be reading U.S. Code congressional administrative news. We require that they read the statute or act in peril if they don't read it. That's all. Well, obviously what we did here was we looked at Concepcion and we drafted our jury instructions based on that because that was the law in every circuit. I'm really asking you how it's defensible since the word the is used in the statute. And the answer is there are other, well, in mixed motive cases, we have to deal with this issue. And it was the government's burden to prove that it was the only purpose. This guy had such a strong revenge motive. The man he shot at so ineffectually had humiliated him repeatedly, and his girlfriend humiliated him. It was a different situation when he had stabbed somebody, but yes. Well, the other guy's girlfriend had humiliated him with the crab comment. He took his gun away from him, pistol whipped him. Right. I can't even see you. I would admit this is a mixed motive case. If they had to prove it was the only one. Well, I'm not sure you're not giving away too much when you call it a mixed motive case because the statute says the, now this person is going to jail for attempted murder. What this statute does says if a gang is the purpose, we're going to add on a ton of time. So it isn't one of those where it's a general mixed motive. This is a kicker that goes out the top like three strikes in California. If you get there, you're going to go away for a long time. So why would it be a mixed motive case? The statute says the, mixed motives is where it's a purpose. I'm having difficulty seeing how either the Second Circuit did or we should interpret the to mean a when it's so clear that the means the. Fair enough. I would say this has come up in other instances. One example would be, for example, in cases where people travel with the purpose of having sex with a minor. That's what that statute says, the purpose of having sex with a minor. And in that type of case, this Court has said that you, all it has to do is be one of the purposes, just like the jury instruction here, that it's a general purpose. And I think that's what the Second Circuit meant by general purpose, by the way, is that it was simply one of the purposes. But your instruction didn't use the word general purpose. And it didn't need to. Your instruction said you need only find that it was one of his purposes. It didn't have to say general. A general purpose is a little stronger than I think suggesting that it's one among many purposes. A general purpose suggests it's sort of an overarching or this is sort of the reason for doing it even though there might be other motives for being there. And you said it doesn't have to be the primary purpose. So his major purpose could have been I'm going to get that guy. And, oh, by the way, it helps me out with the gang. Is that what the statute wants to get to? Is that the conduct the statute's trying to get to? Well, what the statute's trying to do is to federalize cases where people who are in these violent street gangs commit acts of violence like here with the purpose to maintain or increase their position in the gang. There's a distinction to be drawn, though, and I think the statute draws it. It doesn't just say if you commit any of these crimes and you're a gang member, your sentence is a lot higher. What it says is if you commit any of these crimes for the purpose of advancing your position in the gang, your sentence is a lot higher. So it's not like a special law for all gangbangers that they get hammered on the sentence. And it looks like that's how it's used, the way the jury is instructed. It's not just a sentencing enhancement. It's the only way we're in federal court. And the government doesn't take lightly which cases it chooses to bring under this statute, or it certainly shouldn't because it does have this burden of showing that it's at least one of the purposes. If it's a gang hit, we own this corner, you don't own this corner, you're selling dope on this corner, you're interfering with our gang, I would think that would be the straight down the middle federal prosecution. And in this case, this was one of several dozen members of this gang, the Rolling Sixties, who were successfully prosecuted. This is the only one that went to trial, but who were successfully prosecuted under RICO or under Vicar under similar theory. And, you know, you look at the Jones case, which is cited by the defendant, and there's a footnote at the end, and it says, well, we can always retry this case in state court. That's not the case in Nevada. We'd have a double jeopardy issue if we tried to go back and try this defendant for attempted murder or for aggravated assault in state court. Why would you have a double jeopardy problem? Because under Nevada law, we recently dealt with this in the Hells Angels trial that was going on in Las Vegas. Under Nevada law, if the underlying state charge is an element, as it was here, we had to show state attempted murder and state aggravated assault, then it cannot be retried. Not really our problem, though, is it? I mean, if you swing for the stands and you miss the ball, then you could have gotten a double. Fair enough. We were looking at the law as it's been interpreted in the Second Circuit and by every other circuit that's looked at this issue. And they said that because of the remedial purpose, the legislative history, and as you pointed out, the absence of any indication to the contrary, that one of the purposes is enough, the general purpose. And I believe that that's what general purpose means, is one of the purposes. I'm trying to read it like regular English, and I'm thinking there's some things. If somebody walked into my office and said, how come you're reading that mountain of boring-looking paper? And I said, because it's my job. And if they asked me another day, I'd say the same thing. That's why I'm reading it. It's my duty. There are other things where somebody could ask me and I could give them three different answers on three different days and they'd all be true, because I really do have multiple purposes for doing it. This seems more like the latter, and I would think that – and it's hard to see where the gang purpose is a real big part of it. It looks like just personal revenge for plenty of reasons not related to gang activity. I'd say even under your first hypothetical, a clever defense attorney could say, you know, that it isn't just because it's your job that you're looking through that boring papers. It's because sometime a few years ago you decided that, you know, when the President appointed you, you wanted to be a circuit judge and come down from Alaska and do this. Just saying the same thing, fancier words. All right. Well, here, the way I argued it to the jury was if this defendant wasn't in a gang, he would not have been up on that roof shooting across the street at the victim standing in front of the 7-Eleven. That's his purpose. The fact that the victim's girlfriend – or he overheard what he thought was a slight. He used the word crab, which actually was directed at somebody else. That's what started this whole thing going. And if we had to prove it was the only purpose, we would not have had a chance here. We wouldn't have brought it if we knew going in that that was what was required in this type of case. We looked at the case law. When I fly back, I'm not going to be working. I work on a trip down. I'm not going to work on a flight back. I'm going to read a mystery story on a flight back. The only reason that I will be reading the mystery story is that I'll be sitting on an airplane, tired, on a long airplane trip. So you could say the only reason that I'm doing it is my job. But my purpose in doing it will not – there won't be any job motive to reading the mystery story. Why isn't that analogous to this case? The only reason he's on the roof, the only reason he's in this situation is he's a rolling 60s crip. But his purpose – but that's no more than my reading the mystery story on the airplane trip back. His purpose has nothing to do with being a rolling 60s crip. It's just to avenge the slights. His purpose has to – but the slight only makes sense in the context of the fact that he's a rolling 60s crip. If he wasn't a crip, the word crab wouldn't have meant anything to it. And he would – we had two members of this gang or four members of this gang talk about what they would do if they had been called a crab or thought they were called a crab. One said they would spit in the other person's face. The other said that they would have to take care of it, and that could be anything from beating the person up or all the way to killing them. And I'd actually like to focus on the language of the statute, which I think does fit here, which is the purpose to maintain or increase the defendant's position within the rolling 60s gang. I suppose – Go ahead. Yes, sir. I suppose if the instruction had said just that, the jury may well have come back, just using the statutory language, the purpose. But instead, there's added on to this. It doesn't have to be the primary person. It may be, oh, by the way. And I'm wondering if Concepcion didn't do the government a disservice, because all the statute has to – well, what the jury instruction has to do is follow what the statute says and use the term the. But turning it to a creates a problem when you have a case like this where there are some other motives. There's really bad blood between these two. And if the gang thing were set aside, it wouldn't be a surprise they got sniped. So I'm just wondering if Concepcion just doesn't muddy the water somewhat by leading us into the wrong path. Well, I know you have to defend the case because you cited Primontel, which cited Concepcion. But I guess we're struggling with that issue of moving that. Now, there's nothing, as I understand it, in the statute that tells us. There's nothing in legislative history that tells us. According to Judge Kirsch, it's just we don't think that's what they meant. Well, it's a little bit more than that in that in looking at a statute that is to be expansively read as opposed to other criminal statutes, the fact that it is a remedial statute, the fact that it does complement RICO, which every attempt to cut RICO back has also been stopped, particularly in the Second Circuit where this case came out of. And I don't think it's opened up a can of worms. I think that this jury instruction is very clear. And we were just trying to follow the language that had come out of those cases and from the other circuits and say one of the purposes. I understand. I'm not faulting the government. Everything you had before you at that time was going your direction from any circuit. District courts would go astray. But the difficulty now is before us, assuming the argument is that A is wrong and it should have been B, how would you argue that it's not clear? It may be error, but it's not clear error under our statute of looking at that review. How would you argue that it's not clear error? Well, I would argue that if it had just left the word D in, that that would be very confusing because the jury could read D to mean one of three things. It could read D to mean only. It could read D to mean primary. And it could read mean to be one of the reasons. And given those three choices, the other circuits that have looked at this have all come up with the last choice and said it only needs to be one of, and they did that by looking at the legislative history. The lack of legislative history. Pardon me? Yeah. The lack of legislative history. Excuse me, Judge Biby. One of the things that's striking about Concepcion is they may be a little loose in their language, but the evidence in that case was pretty overwhelming. We had a $10 million a month narcotics business going on in Brooklyn with murders and people being rewarded with $10,000 cash and Rolex watches for taking people out on assignments. And your case is a lot more marginal case. We've got one-on-one dispute because somebody's girlfriend has called somebody else a crab. And he gets up on the building and acts like a sniper shooting through the 7-Eleven. And maybe it's coincidental that they're members of a gang. Maybe it's not. Maybe it's morphed into something else. It started out as a gang-related. Now it's morphed into something else. We're right at the margins of this law. Concepcion was not. So any imprecision of the Second Circuit's language maybe can be forgiven in that case. If they were up on plain error review, I would have to say, boy, that was plain error if anything was. That was a pretty clear slam-dunk case. Well, I would say that here you have a violent street gang that also engages in a widespread narcotics trafficking operation. None of that is before us, is it? Sure it was. In the trial, we spent at least a day with the witnesses who were members of the gang talking because we had to prove it was a racket hearing. But you don't have any evidence here that anybody was directing Mr. Banks to go take out Gilmore or that somebody had told Banks, you know, you've been disrespected, and if you don't take care of this, then we're going to take care of you because you're not worthy to be a member of the Crips anymore. Well, he did it as, under the language of Concepcion or Pimentel, it was expected of him because that's what it meant to be a rolling 60 was if you— You're only talking structure. You don't have any direct evidence of that, do you? Well, we— You have a conversation with somebody when somebody says, Banks, you've got to take care of this, and you've got to take care of this now. No, we don't. We do, however, one thing that was left out in the defendant's discussion was there was actually evidence that the defendant turned this into a gang thing, that other gang members knew about it, and that is that after he was pistol-whipped, he had what he called his little homies, the two other gang members, go out and try to get this guy, Gilmore. And Peter, who was one of our cooperating rolling 60s witnesses, explained that. He said, you know, this guy was at such a low point because he'd been pistol-whipped that to get back in good standing in the gang, he had to do that. He had to get this guy back. So even under the plain language of the statute, he had to do it to increase or maintain his position within the rolling 60s. He had to do that to get back. And, you know, really the defendants, as I recall from trial, the defendant's whole case was primarily based on the fact that the defendant was playing basketball in jail with some other rolling 60s, and that showed that it wasn't a gang matter. And we tried to rebut that through the testimony of Mr. Heeter. Counsel, help me with a point on standard of review. As I looked at your brief, it says we review formulation of jury instructions for abuse of discretion. We reviewed de novo whether the jury instruction incorrectly states an element of a crime. As far as I can tell, you're not arguing that we just review under Olano for plain error in your brief. Is that correct? Well, I think that the court's discussion with counsel for the defendant, I think, is accurate that we ---- It looked to me like each of you conceded the other side's case on standard of review. I don't know that we ---- You know, I looked very closely at the standard of review on the omission of evidence and also on the ---- I was thinking you might have done it on purpose because you didn't want Olano review. You wanted to get us in line with the Second Circuit. So you wanted us to review it on the merits and get us in line with the Second Circuit. I certainly would like to have a published opinion that's in line with consensus. It wasn't the purpose. It might have been a purpose. Shea, Your Honor. You got me there. That was not intentional. I agree that it was ---- should be reviewed by plain error and that the only ---- You also concede that your brief didn't say so? No, it said abuse of discretion and then it said de novo. That's right. They did object to the instruction, but they objected to the omission of the word general, and we would argue that that omission didn't make any difference. That was the only ---- They did object to the omission of the word general. They did. They said that that was from the Jones case, which I spent great lengths in the brief distinguishing and would be happy to do so here if you'd like, but I won't unless you ask me, based on the Jones case, which wasn't even a jury instruction case that that word had to be in there. But I think under plain error, this did not affect substantial right. Thank you. Thank you, counsel. Real briefly, it occurs to me that quite possibly, indeed quite probably, what Congress intended by the specific language in 1959A was to limit federal jurisdiction to guys who really deserved the severe increased penalties, such as Mr. Concepcion and such as Mr. Fernandez, who was the leader of a rival faction of the EME and who didn't do anything for personal reasons per the facts in the published opinion. Counsel, maybe you could explain to me your position on counsel's, I think, argument that I think has weight. There is nothing in the legislative history that tells us whether it's the or a. Counsel says in that, but we do have history, that they're trying to make this statute like RICO, and in RICO, courts generally across the United States have been very expansive in the language. And I think that's an argument with weight, and I'd like to hear your response to it. That does sound like the best argument I've heard, and I almost wish I could write a supplemental brief on it, frankly, because it is so due. I mean, right now, as I stand here, I have to go back to my basic position, which is even though it's viewed expansively, it's still a penal statute. And we don't distort plain English to increase federal jurisdiction over state court crimes. I mean, that's my basic position as we speak right now. By the way, I do want to note one thing factually, is after this pistol whipping incident that puts Banks in the coma, there's no evidence that anyone in the 60s even knew anything about the incident. There's just nothing presented in the record to that regard. Unless you have any further questions, I'm through. Thank you, counsel. Thank you. United States versus Banks is submitted.
judges: Wallace, Kleinfeld, Bybee